IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LIL' BROWN SMOKE SHACK, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. CV 09-044-CWD |
| | ) | |
| -vs- | ) | |
| | ) | **MEMORANDUM DECISION AND** |
| LAWRENCE G. WASDEN, et al, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

The Court has before it a Motion to Dismiss (Docket No. 8) filed by Lawrence G.

Wasden, Attorney General of the State of Idaho, the Office of the Attorney General of the State

of Idaho, Richard Armstrong, Director of the Idaho Department of Health and Welfare, and the

Idaho Department of Health and Welfare ("Defendants") seeking dismissal of Lil' Brown Smoke

Shack's ("Plaintiff") Complaint (Docket No. 1).  Having carefully reviewed the briefing

submitted by the parties and the record, the Court finds that Defendants' Motion to Dismiss will

be granted in part and denied in part as more fully explained herein.

## I. Background

On February 5, 2009, Plaintiff Lil' Brown Smoke Shack filed a Complaint for

Declaratory, Preliminary and Permanent Injunctive Relief Against Defendants From Their

Threatened Enforcement of I.C. §39-5701, et seq. (Docket No. 1).  The Complaint requests the Court to declare that enforcement of the Minors' Access Act, I.C. §39-5701, et seq. (the "Act"), would violate federal law because Plaintiff is a tribally owned and licensed business located on tribal land outside of the State of Idaho.  Specifically, Plaintiff argues the Act violates the Commerce Clause, the Indian Commerce Clause, the Supremacy Clause, tribal sovereignty, and Plaintiff's treaty rights under the 1855 treaty between the Yakama Nation and the United States. (Compl., Docket No. 1). On February 9, 2009, Defendants filed a complaint against Plaintiff in the Fourth Judicial District Court of the State of Idaho, in and for the County of Ada, for violations of the Act, specifically selling tobacco products to Idaho consumers without complying with the registration and reporting obligations imposed by the Act.  (Verified Complaint, Docket No. 8-3.)

On February 17, 2009, Defendants filed their Motion to Dismiss (Docket No. 8), arguing that Plaintiff's Complaint should be dismissed in its entirety because: 1) the Eleventh Amendment bars Plaintiff's claims against the Office of the Attorney General and the Idaho Department of Health and Welfare; and 2) under the abstention doctrine in *Younger v. Harris*, 401 U.S. 37 (1971), this Court should abstain from exercising jurisdiction in this case and dismiss the matter.  The Court will address each argument in turn.

## II. Discussion

### A.    Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment prohibits Plaintiff's Complaint against the Office of the Attorney General of the State of Idaho and the Idaho Department of Health and Welfare.  (Memo. In Support p. 4-5, Docket No. 8-2.)  Plaintiff concedes that the Eleventh

MEMORANDUM DECISION AND ORDER - 2

Amendment bars suit against the Office of the Attorney General of the State of Idaho and the Idaho Department of Health and Welfare, so long as any officers, agents, and/or employees of those agencies would be bound by any order that might restrain Defendants Wasden and Armstrong from enforcing the statutory provision against Plaintiff.  (Opposition n.1, Docket No. 19.)  Therefore, the Court will grant the motion to dismiss with respect to the Office of the Attorney General of the State of Idaho and the Idaho Department of Health and Welfare.

**B.      Abstention under *Younger v. Harris***

Defendants argue that the Court should dismiss Plaintiff's remaining claims against Defendants Wasden and Armstrong based on the abstention principles established in *Younger v. Harris*, 401 U.S. 37 (1971).

Generally, federal courts have the virtually unflagging obligation to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist v. U.S.*, 424 U.S. 800 (1976). However, the *Younger* doctrine, which is based on the principles of equity, comity and federalism, espouses a strong federal policy against federal court interference with pending state judicial proceedings, absent extraordinary circumstances.  *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).  Principles of comity are the more "vital consideration," as they preserve respect for state functions. *Younger*, 401 U.S. at 44. Despite this federal policy, carefully defined circumstances may exist where abstention under the *Younger* doctrine is appropriate.  These limited circumstances remain the exception, not the rule. *Gilbertson v. Albright,* 381 F.3d 965, 969 n.2 (9 th Cir. 2004) *citing Green v. City of Tuscon,* 255 F.3d 1086, 1089 (9th Cir. 2001).

The United States Court of Appeals for the Ninth Circuit has held that abstention under

MEMORANDUM DECISION AND ORDER - 3

*Younger* is appropriate only if the following four requirements are met: 1) a state-initiated proceeding is ongoing; 2) the proceeding implicates important state interests; 3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and 4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves. *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose,* 546 F. 3d 1087, 1092 (9th Cir. 2008) *citing Gilbertson*, 381 F.3d at 978. Although *Younger* involved potential federal interference with a state criminal case, the United States Supreme Court has extended the doctrine to federal cases that would interfere with state civil cases and administrative proceedings. *Id. citing Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 627 (1986).

In this action, Plaintiff argues that the first two of the four elements are not met and the Court should not abstain.[1]  The Court will address each of Plaintiff's arguments in turn.

**1. Ongoing state proceeding**

Plaintiff argues that the first requirement for abstention is not met in this case because the federal lawsuit was filed prior to the suit initiated in state court by the State of Idaho.  Defendants respond that, because no substantive proceedings on the merits occurred in federal court prior to the state court suit being filed, the on going state proceeding requirement is satisfied.

As noted above, abstention under *Younger* is appropriate only if there is an ongoing state proceeding. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431

---

[1] Plaintiff does not contest that the third and fourth requirements are met.  Therefore, the Court will not address them here.

(1982).  The critical question with respect to this requirement is whether state proceedings were underway before initiation of the federal proceedings. *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987).  However, "whether the state proceedings are 'pending' is not determined by comparing the commencement dates of the federal and state proceedings." *Polykoff v. Collins*, 816 F.2d 1326, 1332 (9th Cir. 1987).  A state proceeding can be on going even when the state action is not filed until after the federal action is filed, as long as the state action is filed before any proceedings of substance on the merits occur in the federal court action. *M&A Gababee v. Cmty. Redev. Agency* 419 F.3d 1036, 1041 (9th Cir. 2005).

Here, Plaintiff filed its federal action on February 5, 2009, four days prior to the action filed by the State of Idaho in state court on February 9, 2009.  However, based on the law discussed above, the state lawsuit still constitutes an ongoing state proceeding because the Court had not yet commenced any proceedings of substance on the merits prior to the state court suit being filed.  Thus, Plaintiff's first argument fails.

Further, Plaintiff argues that the first requirement is not satisfied because the state court lawsuit is not legitimate.  Instead, Plaintiff argues that the State of Idaho lacks jurisdiction to enforce the Act against Plaintiff.  (Opposition p. 10, Docket No. 19.)  Plaintiff claims this is the distinguishing factor between the cases cited by the Defendants and the case at hand.  The Court finds, as discussed below, that the State of Idaho's jurisdiction to enforce the Act against Plaintiff is unclear and, therefore, the state lawsuit is not clearly illegitimate.  Thus, the Court rejects Plaintiff's second argument and finds that the first requirement of the abstention doctrine is satisfied.

### 2.  Implicates important state interests

Defendants argue that the State of Idaho's interest in regulating tobacco and preventing minors' access to tobacco are important state interests that justify abstention under *Younger*. Plaintiff makes two arguments in response: 1) Defendants have not established an important state interest in enforcement of the permitting provisions of the Act; and 2) the jurisdictional question of whether the state has authority to enforce the Act against businesses located on tribal lands outside of the state is a question of federal law and should be decided by the federal court.  The Court shall address the Plaintiff's second argument first.

*Younger* abstention is required only if the state proceeding implicates important state interests.  *Gilbertson*, 381 F.3d at 978.  However, "the importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interests in the resolution of an individual's case." *San Jose*, at 1094, *quoting Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 618 (9 th Cir. 2003).

Defendants argue that the State of Idaho's interest in regulating tobacco and preventing minors' access to tobacco constitutes a legitimate state interest.  The Court agrees.  However, even where an important state interest is implicated, Younger abstention is inappropriate if the jurisdictional question relating to the state's ability to enforce its laws is paramount and federal. *Fort Belnap Indian Community of the Fort Belnap Indian Reservation v. Mazurek*, 43 F.3d 428 (9th Cir. 1994); *Seneca-Cayuga Tribe of Oklahoma v. State of Oklahoma*, 874 F.2d 709 (10th Cir. 1989);  *Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535 (9th Cir. 1994).

Defendants argue that both the *Sycuan* and the *Fort Belnap* cases decided by the Ninth

MEMORANDUM DECISION AND ORDER - 6

Circuit are inapplicable to the situation at hand, because *Sycuan* deals exclusively with state action that has been expressly preempted by federal law and *Fort Belnap* is only applicable to enforcement of state laws *on* the reservation.

In *Sycuan*, the Ninth Circuit held that California did not have a legitimate state interest, for the purposes of *Younger* abstention, in enforcing certain state gambling laws because a federal law granted the United States exclusive jurisdiction to enforce state gambling laws on tribal land. *Sycuan Band of Mission Indians*, 54 F.3d at 541. The Ninth Circuit stated: "[w]hile the State may well have an interest in seeing that the federal government enforce the State's laws in Indian country, it can have no legitimate interest in intruding on the federal government's exclusive jurisdiction to prosecute." *Id*. The Court agrees that *Sycuan* presents a different factual scenario than that before the Court, where because of the federal statute, the state's lack of jurisdiction was clear. However, in *Sycuan,* the Ninth Circuit did not limit its holding to circumstances where state law clearly is preempted by federal law. Instead, the court of appeals held, citing with approval the Tenth Circuit case, *Seneca-Cayuga Tribe of Oklahoma v. State of Oklahoma*,"[h]ere too, the threshold issue of the State's jurisdiction to prosecute is a matter of federal, not state, law. The district court correctly declined the invitation to abstain under the *Younger* doctrine." *Id. citing Seneca-Cayuga Tribe of Oklahoma,* 874 F.2d at 709.

In *Seneca Cayuga*, after discussing the primacy of the federal interest in regulation of tribal affairs, the Tenth Circuit held that "the threshold question whether the State has authority to regulate Indian bingo is a matter of federal law." *Seneca-Cayuga Tribe of Oklahoma,* 874 F.2d at 714. The court of appeals explained further:

MEMORANDUM DECISION AND ORDER - 7

The question of jurisdiction, in the sense of the State's authority to regulate, is central to the State case because the Tribes concede in this federal litigation that if State laws apply, the Tribe's games do not comply with them. State courts are, of course, competent to decide such jurisdictional questions, but the fact that this central issue is not one of state law indicates that the importance of the State's interest in the state litigation is minimal. Whether, as in this case a state court is asked to decide issues of federal law in an area in which federal interests predominate, the State's interest in the litigation is in our view not important enough to warrant *Younger* abstention. Nor would resolution of these issues in state court prevent conflict between the interests of the Tribes, protected by federal law and the interests of the State. That conflict is inevitable. Because abstention would not mitigate this conflict, the proper forum to resolve it is federal court. *Id*.

In *Fort Belnap,* the State of Montana brought a criminal action in state court against a business located on tribal land for violations of Montana liquor laws. Fort Belnap Indian Community filed an action in federal court, seeking a declaratory judgment that Montana could not criminally prosecute Indians for liquor law violations on tribal lands. In the action before the Ninth Circuit, Montana argued that the district court should have abstained under *Younger* from hearing the case. The Ninth Circuit held that, despite Montana's legitimate interest in the enforcement of its liquor laws through criminal prosecution, the primary issue was whether the State of Montana had jurisdiction under federal law to prosecute Indians who violated Montana liquor laws on an Indian reservation. The court of appeals held that, because the question of state jurisdiction to enforce the law was paramount and federal, *Younger* abstention would not be appropriate. *Fort Belnap Indian Cmty. of the Fort Belnap Indian Reservation,* 43 F.3d at 432.

Here, Defendants argue that *Fort Belnap* applies only to the application of state laws to "on reservation" conduct. Specifically, Defendants argue that because Plaintiff sells tobacco to out of state customers, whether over the internet or through the mail, Plaintiff's conduct is "off reservation" and, therefore, *Fort Belnap* does not apply. Further, Defendants argue that because

it is seeking to regulate only "off reservation" conduct, the State of Idaho clearly has the authority under federal law to enforce the Act against Plaintiff.  Thus, Defendants' conclude there is no federal question that needs to be decided and the Court should abstain under *Younger*.  Plaintiff disagrees, arguing that the Act regulates "on reservation" conduct of Indians because the Act forces Plaintiff to:

> ...obtain an Idaho tobacco permit for its physical location on the Yakama Reservation (I.C. 39-5718); institute an employee training program on the Yakama Reservation; maintain its website with certain content dictated by the State of Idaho (I.C. 39-5704(7)); submit invoices and reports to the state of Idaho (I.C. 39-5716); collect and pay taxes on each sale to Idaho consumers (I.C. 39-5714, 63-2501,et. seq.); and subject itself to unannounced inspections by Idaho officials crossing state lines to enforce these provisions (I.C. 39-5710).  (Memo. In Opposition p. 18-19, Docket No. 19.)

Therefore, Plaintiff contends the State of Idaho does not have jurisdiction to enforce the Act.

The federal government's interest in regulation of Indian tribes is paramount. *Seneca Cayuga*, 874 F.2d 709, 714.  The Constitution granted to Congress the power "[t]o regulate Commerce... with the Indian Tribes."  U.S. Const. Art. I, §8, cl. 3.  The treaties and other agreements that govern the relationship between the Indians and other Americans are part of "the Supreme Law of the Land."  *Id.* Art. VI, cl. 2.   At one time, the Supreme Court held that tribal sovereignty was absolute; however, the Supreme Court departed from that view long ago. *Worcester v. Georgia*, 6 Pet. 515, 561 (1832); *White Mountain Apache Tribe v. Bracker*, 448 U.S. at 141.

Today, the Indians' right to make their own laws and be governed by them does not exclude all state regulatory authority on the reservation.  *Nevada v. Hicks*, 533 U.S. 353, 361

(2001).  Where tribal sovereignty and state regulatory authority collide, courts must seek to reconcile the plenary power of the states over residents within their borders with the semi-autonomous status of Indians living on tribal reservations.  *Dept. Of Taxation and Finance of New York v. Milhelm Attea & Bros., Inc.,* 512 U.S. 61, 73 (1994).  Resolution of these conflicts does not depend on "rigid rules;" instead, courts must undertake "a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." *White Mountain Apache Tribe v. Bracker*, 448 U.S. at 145.

Generally, state law is inapplicable to on-reservation conduct involving only Indians, as the State's regulatory interest in such conduct is minimal and the federal interest in encouraging self-government is at its strongest.  *Id.*  However, state laws may be applied to on-reservation activity if "exceptional circumstances" exist.  *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324 (1983).   In contrast, Indians extending beyond reservation boundaries generally have been held subject to non-discriminatory state law otherwise applicable to all citizens of the state. *White Mountain Apache Tribe,* 448 U.S. at n.11 *citing Mescalero Apache Tribe v. Jones, 411 U.S 145, 148-9.*

Based on the aforementioned cases and standards, and the arguments of the parties with respect to whether the Act regulates on or off reservation activity, the Court disagrees with Defendants and finds that the issue of the state's jurisdiction is not conclusive.  Here, like in *Fort Belnap*, *Sycuan,* and *Seneca-Cayuga*, the question of whether the state law is enforceable against Plaintiff is a federal question in an area, tribal law, where federal interests predominate.  Thus, the Court finds that the State of Idaho's interest in this litigation is not sufficiently important to

warrant *Younger* abstention in light of the predominant federal question regarding the State of Idaho's jurisdiction to enforce the Act.  Thus, as Defendants have failed to prove all requirements for *Younger* abstention, the Court will deny Defendants Motion to Dismiss (Docket No. 8) with respect to Defendants Wasden and Armstrong.

<u>**ORDER**</u>

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      Defendants Motion to Dismiss (Docket No. 8) is granted in part and denied in part as outlined above.



DATED: July 7, 2009

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge

MEMORANDUM DECISION AND ORDER - 11